# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 24-CR-241-JEB** |
| **v.** | : | |
| | : | |
| **JOSEPH JULIUS LAPOINT,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Joseph Julius Lapoint ("Lapoint") has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct in a Capitol Building or Grounds) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Lapoint to 45 days' incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

## I.    Introduction

Defendant Lapoint, a 43-year-old truck repair mechanic, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power

1

after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Lapoint pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) & (G). The government's recommendation is supported by the defendant's (1) entry onto Capitol Grounds as part of the initial breach at the Peace Circle, despite witnessing violence and clear signs that entry was not allowed, (2) entry into the Capitol Building after observing continued violence on the Capitol Grounds and clear attempts to deter the rioters from advancing – Lapoint himself was struck with a flashbang grenade, (3) entering a private office, posing for photos, and otherwise supporting the riot inside the Capitol Building, (4) posting footage from the riot to social media in celebration of his actions, (5) his lack of remorse, and (6) his criminal history.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Lapoint's crime support a sentence of to 45 days' incarceration and 36 months' probation in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

II.      **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 20 at ⁋⁋ 1-7, the Statement of Offense.

*Lapoint's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Lapoint and then girlfriend Nicole Marie Joyner[2] ("Joyner") traveled to the U.S. Capitol Building in Washington, D.C. Lapoint and Joyner were among the first to enter U.S. Capitol Grounds, via the Peace Circle, where rioters first pushed through the barriers that lined the restricted perimeter around the grounds. Lapoint observed bike rack barricades and snow fencing bearing signs with the words "area closed" blocking his path, and uniformed police officers behind those barricades.[3] Lapoint then watched as other rioters dismantled the barricades and violently overran the heavily outnumbered police line; one officer suffered a concussion. He recorded the breach on his cell phone,[4] and then proceeded to enter the restricted area himself.

---

[2] Nicole Marie Joyner was charged alongside Lapoint in a February 23, 2024 complaint. Her case, now pending separately under 24-cr-371-JEB, is set for trial on October 21, 2024.

[3] Exhibit 1: Public video of Lapoint and Joyner observing rioters overrun police line and barricades near the Peace Circle on January 6, 2021, at 0:26; *see also* Exhibit 2: Public video of Lapoint and Joyner observing rioters overrun police line and barricades near the Peace Circle on January 6, 2021, at 0:50.

[4] Exhibit 3: Video recorded by Lapoint on January 6, 2021 of rioters overrunning police line and barricades near Peace Circle.



*Still of Exhibit 1: Lapoint and Joyner observe barriers to entry at Peace Circle*

At the Lower West Terrace of the U.S. Capitol, Lapoint chanted, "stop the steal" with the crowd and shouted, "knock knock Pelosi."[5] He observed as the crowd battled with the police, including the police using flashbang grenades to try and deter the crowd from advancing. One flashbang grenade even hit Lapoint in the leg before exploding near him.[6]

Undeterred, he continued to advance towards the Capitol building. Members of the crowd pushed past a line of police officers blocking a set of stairs leading to the Upper West Terrace of the Capitol Building. The stairs were covered by scaffolding and tarp, part of the staging for the upcoming presidential inauguration. Other rioters, including Lapoint and Joyner, followed that initial group up onto the stairs.[7] However, another police line prevented the crowd from

---

[5] Exhibit 4, video recorded by Lapoint on January 6, 2021 of crowd chanting on Lower West Terrace, at 0:24.

[6] *See* Exhibit 5, video recorded by another rioter showing flashbang grenades explode in Lapoint's immediate vicinity, at 0:13, 0:28 (Lapoint is seen intermittently in bottom right corner of video); Exhibit 6, live video recorded and broadcast by Nicole Joyner on January 7, 2021 wherein Lapoint recounts being hit in the leg with a flashbang grenade, at 16:25.

[7] Exhibit 7, video recorded by Lapoint on January 6, 2021 of crowd on Lower West Terrace, filmed from the Northwest stairs.

advancing further up the stairs. Lapoint watched others remove bike rack barricades from the police line at the top of the stairs and pass them back through the crowd.[8] At about 2:10 p.m., the crowd surged past the police line at the top of the stairs and advanced to the Upper West Terrace of the Capitol Building. Lapoint and Joyner advanced up the stairs minutes later, and joined the cheering crowd on the Upper West Terrace for about an hour.[9]



*Still of Exhibit 8: Lapoint watches crowd remove barricades on Northwest stairs*

At approximately 3:08 p.m., Lapoint and Joyner entered the U.S. Capitol Building via the Senate Wing Door, as Lapoint recorded the scene on his phone and chanted, "USA."[10] An alarm was clearly audible. Lapoint entered the Crypt, where he continued to record the progression of the riot on his phone.[11]

---

[8] Exhibit 8, public video showing photos of rioters on Northwest stairs, at 2:02.
[9] Exhibit 9, video recorded by Lapoint on January 6, 2021 of crowd approaching Capitol building on the Upper West Terrace, as Lapoint says, "millions of Americans are storming the Capitol, we are coming, we are here," and Joyner shouts, "1776."
[10] Exhibit 10, CCTV footage of Lapoint and Joyner entering Capitol through Senate Wing Door, at 3:08 p.m.; Exhibit 10B, video recorded by Lapoint on January 6, 2021 after entering Capitol.
[11] Exhibit 11: Public photograph of Lapoint using his phone in the Capitol's Crypt, from article in Slate (found at https://slate.com/news-and-politics/2021/01/us-capitol-riot-videos-photos-inside.html).



*Exhibit 11: Public photograph of Lapoint using his phone in the Capitol's Crypt*

While inside the building, Lapoint entered S145, an office within the Senate side of the building, where he observed uniformed police officers through a window. He used his phone to record the officers, then climbed onto a windowsill, cheered, and posed for photographs.[12]



*Still of Exhibit 12: Lapoint climbs on windowsill and poses for photos in Room S145*

---

[12] Exhibit 12, public video of Lapoint and Joyner inside room S145, at 2:42-3:53.

Lapoint and Joyner remained inside the building for over 20 minutes, exiting at approximately 3:29 p.m.[13]

*Additional Social Media Posts*

During and after the attack on the Capitol, Lapoint used social media to broadcast his actions. On January 6, 2021, Lapoint used Tiktok to share videos of what he experienced at the U.S. Capitol. In one video, while on the Lower West Terrace of the Capitol, he exclaims that he "stormed the Capitol with the rest of America," followed by, "blow something up."[14] The day after the defendant stormed the Capitol, he and Joyner boasted about their actions on a live video on one of Joyner's social media accounts. At one point, Lapoint stated that, "if they come back on the 20th and try to take the white house and take Biden out when he's in there, I'm coming back and I'm taking the fucking White House."[15] Even after a year had passed, Lapoint continued to celebrate his participation in the riot on social media by reposting his earlier Tiktok from the U.S. Capitol with the words, "HAD A BLAST one year ago" superimposed on it.[16]

---

[13] Exhibit 13, CCTV footage of Lapoint and Joyner exiting Capitol through Senate Wing Door, at 3:29 p.m.
[14] *See* Exhibit 14: TikTok video posted by Lapoint on January 6, 2022 showing Lapoint and Joyner on Capitol Grounds on January 6, 2021.
[15] Exhibit 6, live Instagram video recorded by Nicole Joyner on January 7, 2021, at 24:07.
[16] *See* Exhibit 14.



*Still of Exhibit 14: Lapoint TikTok from Jan. 6, 2022, depicting Capitol on Jan. 6, 2021*

*The Charges and Plea Agreement*

On May 17, 2024, the United States charged Lapoint by a four-count Information with violating 18 U.S.C. § 1752(a)(1) & (2) and 40 U.S.C. § 5104(e)(2)(D) & (G). On July 18, 2024, pursuant to a plea agreement, Lapoint pleaded guilty to Counts Three and Four of the Information, charging him with violations of 40 U.S.C. § 5104(e)(2)(D) & (G). By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

## III.   Statutory Penalties

Lapoint now faces a sentencing for violating 40 U.S.C. § 5104(e)(2)(D) & (G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000 on each count. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

IV.     **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 45 days' incarceration and 36 months' probation.

A.  **The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Lapoint's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Lapoint, the absence of violent or destructive acts is not a mitigating factor. Had Lapoint engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Lapoint's case is his entry onto Capitol Grounds as part of the initial breach at the Peace Circle. Unlike many others who arrived at the Capitol later in the day, Lapoint arrived to find the Capitol Grounds devoid of other rioters. Interlocking bicycle rack barricades encircled the West side of the grounds, preventing Lapoint and others from advancing towards the Capitol Building. The barricades bore signs with the words, "area closed." Uniformed police officers manned those barricades as an additional deterrent to entry onto Capitol Grounds. Lapoint had perhaps the clearest opportunity of all January 6 rioters to observe that the Capitol and its grounds were closed to the public. However, when Lapoint stood with Joyner near the front of a crowd and watched as other individuals surged forward, dismantled the barricades,

and injured police officers, Lapoint followed. His actions would facilitate the continued breach of the grounds throughout the remainder of the day.

Even as violence escalated on the West side of the Capitol, and even as Lapoint himself was hit with a flashbang grenade deployed by police to deter him and the swelling crowd from advancing, Lapoint remained undeterred. And once inside the building, Lapoint emphatically supported the chaos around him, going as far as to enter a private office where he cheered and jumped on a windowsill to pose for photographs, despite observing police amassed outside. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 45 days' incarceration in this matter.

**B.  Lapoint's History and Characteristics**

Lapoint's history of violence and disrespect for the law also supports the requested sentence. In April 2008, Lapoint was arrest for petit theft, a misdemeanor. In August 2008, Lapoint was arrested for criminal mischief, a misdemeanor. He was sentenced to probation in both cases and ordered to pay $200 restitution. In February 2009 he was sentenced to 45 days incarceration for violating the terms of his probation. PSR ⁋ 32-33.

On November 25, 2008, Lapoint was sentenced to one year of probation on misdemeanor battery charges. On December 15, 2008, Lapoint was arrested for violating a domestic violence injunction, as well as driving with a suspended license. In March 2009 he was sentenced to 18 days incarceration as a result.  PSR ⁋ 34-35.

In September 2013, Lapoint was again arrested and charged with domestic battery. No conviction resulted from the charges. PSR ⁋ 37.

Lapoint's experience with the criminal justice system, and in particular, repeated arrests for acts of violence, demonstrate that he knew better than to condone violence and join the

riotous mob that stormed the U.S. Capitol on January 6, 2021. Moreover, and as discussed further below, his violations of probation and a court's protective order demonstrate the need for his sentence to promote respect for the rule of law.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was itself an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of incarceration.

First, as discussed above, Lapoint's history of prior arrests and convictions reveals a pattern of disrespect for the law. Crucially, Lapoint violated conditions of supervision on multiple occasions, including by violating a protective order following a plea to domestic battery.

Second, although Lapoint has accepted responsibility pleading guilty, the Court should view any remorse Lapoint expresses at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan). The day after the defendant stormed the Capitol, he discussed returning to Washington, D.C. on inauguration day to "tak[e] the fucking White House" and "take Biden out when he's in there."[17] Having a year to reflect further on the violence of the riot, and the degradation of our nation's institutions that it caused, the defendant's message remained:

---

[17] Exhibit 6, live Instagram video recorded by Nicole Joyner on January 7, 2021, at 24:07.

"HAD A BLAST."[18]

With the 2024 presidential election rapidly approaching, Lapoint's statements following January 6, 2021 are of particular concern. The Court must sentence Lapoint in a manner sufficient to deter him specifically, and others generally, from again engaging in political violence. The defendant's flagrant disregard for the severity of his actions in these circumstances further warrants a period of supervision in addition to incarceration.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[19] This Court must sentence Lapoint based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Lapoint has pleaded guilty to Counts Three and Four of the Information, charging him with disorderly conduct in a Capitol Building and parading, picketing, or demonstrating in a Capitol Building, in violation of 40 U.S.C. § 5014(e)(2)(D) & (G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted

---

[18] *See* Exhibit 14, TikTok video posted by Lapoint on January 6, 2022 showing Lapoint and Joyner on Capitol Grounds on January 6, 2021.

[19] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court has sentenced other Capitol breach defendants who (1) breached police lines at the front of the crowd, (2) entered the Capitol building despite observing violence and other barriers to entry on Capitol Grounds, (3) celebrated and supported the riot inside the Capitol Building, (4) posted footage from the riot to social media, and (5) failed to express remorse for their actions. Rioters who breached police lines at the front of the crowd bear relatively greater responsibility for the riot because they had the clearest opportunity to observe signs barring their entry and facilitated the mob that followed them past those barriers.

Dominick Madden, 21-cr-55, is another such January 6 defendant sentenced by this Court. As with Lapoint, an aggravating factor in Madden's case was his being one of the first to breach a police line on the West side of the Capitol, which encouraged others to do the same. Both Madden and Lapoint witnessed violence against law enforcement officers, but nevertheless bypassed the police. The Court ultimately sentenced Madden to 20 days' incarceration, crediting Madden for his remorse. However, as discussed, Lapoint's statements on social media – even with a year to reflect on the tragedy of January 6, 2021 – show the opposite. Therefore, a sentence of 45 days' incarceration plus supervised release is more appropriate.

The Court's sentence in the case of Charles Hand III, 22-cr-111, provides another relevant example. Both Lapoint and Hand observed downed fencing and violence against police officers as they approached the Capitol, but nevertheless proceeded forward and stormed the building. Both continued to foment chaos inside the Capitol building – Hand by chanting and affirming rioters climbing on statues, Lapoint by himself yelling and climbing on a windowsill in a private office.

And both demonstrated a lack of remorse in their social media statements after the fact. While Hand was sentenced to 20 days' incarceration and 6 months' supervised release for his disruptive behavior, Lapoint's criminal history and participation in the very first breach of the Capitol Grounds near the Peace Circle support a greater sentence of 45 days' incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[20] Generally, restitution under the VWPA must "be tied to the loss

---

[20] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense

caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Lapoint must pay $500 in restitution, which reflects in part the role Lapoint played in the riot on January 6.[21] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Lapoint's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 89.

## VI.    Fine

The defendant's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) & (G) subject him to a statutory maximum fine of $5,000 per count. *See* 18 U.S.C. § 3571(b). In determining whether

---

against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[21] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994). Here, the defendant has not shown an inability to pay, thus pursuant to the considerations outlined in U.S.S.G. § 5E1.2(d), the Court has authority to impose a fine. § 5E1.2(a), (e).

## VII.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 45 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution. Such a sentence promotes respect for the law and deters future crime by imposing restrictions on Lapoint's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   _____/s/ Alexander Diamond_____
ALEXANDER M. DIAMOND
NY Bar No. 5684634
Assistant United States Attorney
District of Columbia
601 D St. NW
Washington, DC 20530
(202) 506-0427
Alexander.Diamond@usdoj.gov

17